UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MODERN WOODMEN OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No: 4:18-cv-1730 |
| EDNA M. DILLON, | ) | |
| | ) | |
| Serve: 16950 Sherwood Lane | ) | |
| St. James, Missouri 65559 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND PERMANENT INJUNCTION

Plaintiff Modern Woodmen of America ("MWA"), pursuant to, *inter alia*, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for its Complaint for Declaratory Judgment and Permanent Injunction, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      MWA is a fraternal benefit society incorporated under the laws of the State of Illinois, with its principal place of business in Rock Island, Illinois.  MWA therefore is a citizen of Illinois.

2.      Upon information and belief, Defendant Edna M. Dillon ("Defendant") is a citizen of the State of Missouri and a resident of Phelps County, Missouri, within the divisional venue of the Eastern Division of this Court.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that this case involves a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over Defendant, and venue is proper in this District, pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS APPLICABLE TO ALL COUNTS

5.     On January 24, 2017, Terry Dillon signed and submitted to MWA an Application for Life Insurance (the "Application"), seeking life insurance in the amount of $90,000.

6.     On January 31, 2017, MWA issued Certificate No. 8835932 (the "Certificate") insuring the life of Mr. Dillon in the amount of $90,000 and attaching a copy of the Application. A true and accurate copy of the Certificate, with redaction as required by L.R. 5-2.17, is attached to this Complaint as **Exhibit 1**.  Along with the Certificate, the Application forms part of Mr. Dillon's contract with MWA. *See* **Ex. 1**, p. 17.

7.     The Certificate designates Defendant as the principal beneficiary. *Id.* at pp. 19 and 25.

8.     The Certificate contains a two-year incontestability provision, which provides that the Certificate is not contestable after it has been in effect for two years during Mr. Dillon's lifetime. *Id.* at p. 17.

9.     Mr. Dillon passed away on May 17, 2018, less than two years after the Certificate was issued.

10.     Shortly thereafter, Defendant notified MWA of Mr. Dillon's death.

11.     On May 24, 2018, MWA sent correspondence to Defendant explaining that because Mr. Dillon's death was within the two-year contestable period under the Certificate, MWA was reviewing the Application and the cause and manner of Mr. Dillon's death to verify the information provided by Mr. Dillon at the time the Certificate was issued.   In that

correspondence, MWA informed Defendant that she would be asked to provide an authorization for the release of information needed by MWA to complete its investigation.

12.     Thereafter, on May 29, 2018, Defendant signed a Claimant's Statement and submitted it and a Certification of Death to MWA.  A true and accurate copy of the Claimant's Statement submitted to MWA by Defendant, with redaction as required by L.R. 5-2.17, is attached to this Complaint as **Exhibit 2**.

13.     On July 9, 2018, CS Claims Group, Inc. ("CS Claims"), acting on behalf of MWA, wrote to Defendant's counsel requesting that Defendant execute an authorization for the release of medical records needed by MWA to complete its claim review.  The requested authorization was HIPAA-compliant and was intended to allow CS Claims to obtain records from those medical providers who treated Mr. Dillon prior to his death, including but not limited to those providers identified by Defendant.

14.     Defendant, through counsel, requested that MWA identify the providers from whom MWA intended to seek records, and MWA therefore sent Defendant's counsel separate authorizations for each provider identified to date.  The requested authorizations were directed to Phelps County Regional Medical Center (formerly Rolla Hospital); Forest City Family Practice; Missouri Heart Center; Mercy Convenient Care (formerly St. John's Urgent care); The Dermatology Center; and a number of individual medical providers affiliated with those providers.

15.     Defendant has refused to execute the requested authorizations.

16.     In his Application, Mr. Dillon expressly contemplated that his medical providers would provide information and records to MWA in order to permit MWA to determine his

eligibility for insurance coverage or payment of benefits under the Certificate, and he specifically

authorized release of that information to MWA. In that regard, the Application provides:

> **AUTHORIZATION TO OBTAIN INFORMATION** – I authorize any physician, medical professional, hospital, Veterans Administration, clinic, medical care or custodial institution, insurance company, prescription services, MIB, Inc., consumer reporting company, insurance support organization, employer, business associate, or other person or entity to give to Modern Woodmen of America . . . any and all such information described below concerning me. . . .
>
> **Types of Information Requested** – The information that may be disclosed is that information that relates to the age, occupation, physical condition, prescription authorization, health history, the diagnosis, treatment and prognosis with respect to any physical or mental condition including drug or alcohol abuse and mental illness, character, general reputation, personal characteristics, motor vehicle report, hobbies and mode of living. . . .
>
> * * *
>
> **Use and Disclosure** – I understand that the information obtained by use of this Authorization will be used by Modern Woodmen of America to determine eligibility for insurance coverage or for benefits thereunder. . . .
>
> * * *
>
> • I agree that a photographic copy of this Authorization shall be as valid as the original. I understand that this Authorization shall be valid for two and one-half years from the date shown below [01-24-2017].

*See* **Ex. 1**, p. 30.

17. At the time of his Application, on January 24, 2017, Mr. Dillon also executed a

HIPAA Compliant Authorization to Disclose Protected Health Information (the

"Authorization"). A true and accurate copy of the Authorization, with redaction as required by

L.R. 5-2.17, is attached to this Complaint as **Exhibit 3**.

18. That Authorization states, "I authorize any licensed physician, medical

practitioner, hospital, clinic, laboratory, pharmacy, pharmacy benefit manager, or medically

related facility, the MIB or other organization, institution or person that has knowledge or

records of me and my health to disclose information as allowed or required by law." **Ex. 3**.

19.     In her Claimant's Statement, consistent with Mr. Dillon's prior express authorizations in both the Application and Authorization, Defendant also expressly authorized Mr. Dillon's medical providers to provide Mr. Dillon's medical information and records to MWA, stating:

> I hereby authorize any licensed physician, medical practitioner, hospital, Veterans Administration, clinic, or other medical or medically related facility, or other organization, institution or person that has any records or knowledge of the decedent or his health, to give to Modern Woodmen of America any such information.  A photographic copy of this authorization shall be as valid as the original.

**Ex. 2**.

20.     Notwithstanding that authorization in the Claimant's Statement she submitted to MWA, Defendant now contends she is not required to execute the HIPAA-compliant medical authorizations needed by MWA to obtain Mr. Dillon's medical records in order to complete its claim review.

21.     CS Claims, acting on behalf of MWA, has attempted to use the Authorization executed by Mr. Dillon to obtain medical records from Mr. Dillon's medical providers identified to date.

22.     Two providers (Missouri Heart Center and The Dermatology Center) accepted the Authorization and produced Mr. Dillon's medical records to CS Claims.

23.     One provider (Mercy Convenient Care (formerly St. John's Urgent care)) has not responded to CS Claims' request for Mr. Dillon's medical records.

24.     The remaining providers (Phelps County Regional Medical Center (formerly Rolla Hospital) and Forest City Family Practice) have declined to accept the Authorization for a variety of stated reasons, including that the Authorization is not dated within the past six months and because the signatory (Mr. Dillon) is deceased.

5

25.     Although MWA has been able to obtain a limited number of medical records using the Authorization, it has not been able to obtain the majority of Mr. Dillon's medical records in order to enable it to conduct a full claim review.

26.     MWA needs to review Mr. Dillon's medical records from his medical providers as part of its claim review to verify the information provided by Mr. Dillon in his Application, in which he answered questions regarding his medical condition in the seven years prior to the date of the Application.

27.     Because MWA is unable to obtain medical records from all of the identified providers using the Authorization executed by Mr. Dillon, in order to complete its claim review MWA needs Defendant to execute HIPAA-compliant medical authorizations directed to those providers who will not accept the Authorization, including any additional providers subsequently identified by MWA, consistent with Defendant's previously provided authorization in the Claimant's Statement. *See* **Ex. 2**.

28.     Despite repeated requests by MWA and CS Claims for execution of those necessary HIPAA-compliant medical authorizations, Defendant has not provided any of the requested authorizations.

29.     Instead, in the course of five letters, Defendant's counsel has questioned MWA's authority for requesting the authorizations, rejected MWA's explanation of its need for those authorizations to complete its claim review and reach a decision regarding Defendant's claim for benefits, stated that Defendant has no obligation to provide the requested authorizations, demanded that MWA provide evidence that its claim review is reasonable, demanded immediate payment of the life insurance proceeds to Defendant without further review or investigation, accused MWA of vexatious conduct in its review of Defendant's claim for benefits, and asserted

that a request for declaratory relief from this Court is groundless and frivolous and an abuse of process.

## COUNT I – DECLARATORY JUDGMENT

30.     MWA re-alleges and incorporates paragraphs 1-29.

31.     This action is brought pursuant to the provisions of 28 U.S.C. § 2201.

32.     A substantial, ripe, and justiciable controversy exists between MWA and Defendant concerning the parties' respective rights and obligations under the Certificate.

33.     Because Mr. Dillon's death occurred within the two-year contestable period under the Certificate, MWA has a right to investigate Mr. Dillon's eligibility for insurance coverage and benefits under the Certificate and, as part of that investigation, to review Mr. Dillon's medical records. *See* **Ex. 1**, p. 17.

34.     MWA therefore can require Defendant to sign HIPAA-compliant medical authorizations so that MWA can complete its claim review and make a decision relative to Defendant's claim for benefits.

35.     MWA is not required to pay benefits under the Certificate without the opportunity to complete its investigation. *See Toppins v. Minnesota Life Ins. Co.*, 460 Fed.Appx. 768 (10th Cir. 2012) (applying Oklahoma law).

36.     A substantial, ripe, and justiciable controversy exists between MWA and Defendant as to MWA's rights and obligations under the Certificate, namely whether MWA is entitled to complete its investigation, which can only occur once Defendant provides all requested HIPAA-compliant medical authorizations, before making a claim decision to pay benefits to Defendant.

37. MWA does not have an adequate remedy at law because, absent the declaratory relief requested, Defendant, through counsel, has stated that she will not sign the requested medical authorizations, such that MWA will not be able to complete its investigation and make a claim decision.

38. MWA respectfully requests a judgment declaring that MWA has a right to conduct an investigation under the Certificate; that it has no obligation to make a claim decision or pay benefits under the Certificate until it has completed that investigation; that in connection with that investigation, MWA has the right to review Mr. Dillon's medical information and records, as authorized by Mr. Dillon; that MWA cannot complete its investigation without Defendant's execution of all requested medical authorizations; and that Defendant is required either to provide the requested medical authorizations or withdraw her claim for benefits until such time as MWA can obtain the medical information and records necessary to complete its investigation.

39. Alternatively, pursuant to HIPAA, this Court can order Mr. Dillon's medical providers to provide the requested records to MWA so that MWA can complete its investigation, and MWA respectfully requests a judgment declaring that it is entitled to such an order. 45 C.F.R. § 164.512(e)(1)(i).

40. Because this dispute requires a declaration of the parties' respective rights and obligations under the Certificate, MWA lacks an adequate remedy at law.

41. In the absence of the declaratory relief requested, MWA will be unable to complete a claim review it is entitled to conduct pursuant to the terms of the Certificate and Mr. Dillon's Application and Authorization and under applicable law.

42.     If MWA is not allowed to conduct claim reviews authorized by its contracts with its beneficial members and applicable law, it will be unable to protect the integrity of its underwriting process and keep its insurance products affordable.

43.     Moreover, MWA cannot close Defendant's claim without running the substantial risk that Defendant will bring an action against MWA in which she not only seeks benefits under the Certificate but also, as threatened by her counsel, asserts claims for MWA's allegedly vexatious conduct.

44.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth the rights, obligations, and liabilities that exist between MWA and Defendant under the Certificate.

45.     Declaratory judgment is the most efficient method for the resolution of the parties' disputes.

WHEREFORE, MWA respectfully requests this Court enter Judgment as follows:

A.     Declaring that MWA has a right to conduct an investigation under the Certificate to determine eligibility for insurance coverage or payment of benefits;

B.     Declaring that MWA has no obligation to make a claim decision or pay benefits under the Certificate until it has completed its investigation of Defendant's claim;

C.     Declaring that, pursuant to, *inter alia*, Mr. Dillon's contract with MWA and his express authorization in the Application and Authorization, MWA is entitled to obtain and review Mr. Dillon's medical records;

D.   Declaring Defendant's execution of all requested medical authorizations is necessary in order for MWA to complete its investigation;

E.   Declaring that Defendant is required either to execute the requested medical authorizations to permit MWA access to Mr. Dillon's medical records or withdraw her claim for benefits until such time as MWA can obtain the medical information and records necessary to complete its investigation;

F.   In the alternative, declaring that MWA is entitled to an Order of this Court pursuant to 45 C.F.R. § 164.512(e)(1)(i) ordering Mr. Dillon's medical providers to disclose Mr. Dillon's medical records for the seven years preceding January 24, 2017, the date of the Application;

G.   Declaring that MWA has not engaged in any vexatious conduct with respect to Defendant as to any obligations created by or owed to Defendant under the Certificate;

H.   Awarding MWA its attorneys' fees, costs, and expenses incurred to the maximum extent allowed by law; and

I.   Awarding MWA such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II – PERMANENT INJUNCTION

46.   MWA re-alleges and incorporates paragraphs 1-45.

47.   MWA has repeatedly requested that Defendant sign medical authorizations necessary to allow MWA access to Mr. Dillon's medical records so that MWA can complete its claim review.

48.     Defendant has refused to sign the necessary authorizations and continues to insist that MWA does not have the right to investigate her claim for benefits under the Certificate and must simply approve the claim and pay the insurance proceeds to Defendant.

49.     There is an immediate and real controversy between the parties as to whether MWA has a right to investigate Defendant's claim and whether MWA can require Defendant to sign requested medical authorizations before making a decision on her claim.

50.     Unless the Court grants injunctive relief in the form of a permanent injunction requiring Defendant to either give MWA access to Mr. Dillon's medical records so that MWA can complete its investigation, or to withdraw her claim under the Certificate until such time as MWA receives the medical records necessary to complete its investigation, MWA will suffer irreparable harm.

51.     Among other things, MWA will be prevented from exercising its contractual rights and obligations under the Certificate, in that it will be unable to complete a claim review it is entitled to conduct both by the terms of the Certificate and Mr. Dillon's Application and Authorization and under applicable law.

52.     If MWA is not allowed to conduct claim reviews authorized by its contracts with its beneficial members and applicable law, it will be unable to protect the integrity of its underwriting process and keep its insurance products affordable.

53.     Moreover, MWA cannot close Defendant's claim without running the substantial risk that Defendant will bring an action against MWA in which she not only seeks benefits under the Certificate but also, as threatened by her counsel, asserts claims for MWA's allegedly vexatious conduct.

54.     The harm to MWA in not granting a permanent injunction outweighs any harm to the public or Defendant in granting the same, and the granting of a permanent injunction will not harm the public interest.

55.     Accordingly, MWA has no adequate remedy at law, and the Court should grant a permanent injunction.

WHEREFORE, MWA respectfully prays as follows:

A.     For a permanent injunction requiring Defendant to execute necessary and appropriate medical authorizations for MWA to obtain Mr. Dillon's medical records for the seven years preceding January 24, 2017, the date of the Application;

B.     In the alternative, for a permanent injunction requiring Defendant to withdraw her claim to MWA under the Certificate until such time as MWA receives the medical records necessary to complete its investigation; and

C.     For such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

ARMSTRONG TEASDALE LLP


By: */s/ Cynthia M. Juedemann*
    Clark H. Cole                          #28668MO
    Cynthia M. Juedemann      #63921MO
    7700 Forsyth Blvd, Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    ccole@armstrongteasdale.com
    cjuedemann@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF MODERN WOODMEN OF AMERICA